IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| EVELYN R. B.,[1] | Case No. 3:19-cv-00600-JR |
| Plaintiff, | |
| | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINSTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Evelyn B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social Security Income. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

In September 2014, plaintiff applied for Title XVI benefits alleging disability beginning December 31, 2005, due to depression, anxiety, migraines, learning disability, scoliosis, chronic pain and swelling in both legs, and arthritis in her fingers. Tr. 231-36, 259. In January 2018, plaintiff amended her alleged onset date to coincide with the protected application date, thus alleging disability as of July 28, 2014. Tr. 40. Born in April 1973, plaintiff was 41 years old as of the amended alleged onset date. Tr. 35, 97, 111.

Plaintiff's application was denied initially and upon reconsideration. Tr. 97-124. On January 4, 2018, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE").[2] Tr. 32-61. On February 27, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 26. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. Tr. 19. At step two, the ALJ determined the following impairments were medically determinable and severe: "asthma, obesity, degenerative joint disease of both knees, scoliosis, depression, anxiety, personality disorder, chronic venous insufficiency, and posttraumatic stress disorder." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Id.

---

[2] Plaintiff initially appeared before the ALJ on August 9, 2017, but she had recently been the victim of a domestic violence episode that resulted in a concussion, so the ALJ continued the case. Tr. 62-67.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work as defined by 20 C.F.R. § 416.967(b):

> She can lift 20 pounds occasionally and 10 pounds frequently; stand and walk for no more than 2 hours out of an 8-hour workday; no limitation on sitting but requires a sit/stand option every hour; no climbing or balancing; occasionally stoop, crouch, kneel, and crawl; no concentrated exposure to noxious fumes or odors; perform only unskilled and low semi-skilled work; only occasional interaction with coworkers; and no interaction with the general public.

Tr. 20.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 24. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy that plaintiff could perform despite her impairments, such as sewing machine operator, electronics worker, and small products assembler. Tr. 24-25.

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to provide a legally sufficient reason, supported by substantial evidence, to reject medical opinion of treating physician Diego Diaz, M.D. Pl.'s Opening Br. 4-9 (doc. 13). At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Id. To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted

by another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. Id.

Plaintiff initiated care with Dr. Diaz in 2014. During the adjudication period, Dr. Diaz provided treatment to plaintiff regularly for management of her asthma, heart murmur, knee pain and swelling, varicose veins, ankle injury, weight gain, arthritis, skin rash, and anxiety. Tr. 462-544, 687-991, 1109-26. During her appointments plaintiff consistently reported leg pain, though she occasionally mentioned some relief from treatment. See, e.g., Tr. 487 (plaintiff reporting that pain medication was helping with pain); but see Tr. 473 (plaintiff reporting the return of pain and swelling less than one week after a steroid injection).

In July 2017, Dr. Diaz completed a form in support of plaintiff's disability claim. Tr. 992-96. Dr. Diaz identified plaintiff's medical conditions as bilateral knee osteoarthritis and bilateral varicose veins. Tr. 992. In terms of functional abilities, the doctor checked boxes indicating plaintiff could: frequently carry twenty pounds and occasionally carry less than ten pounds; stand and/or walk for two hours at a time; stand and/or walk for two hours total in an eight hour day; sit for six hours at a time; sit for six hours total in an eight hour day; never climb or balance; occasionally stoop/bend, kneel, crouch, and crawl; and constantly reach, handle, finger, and feel. Tr. 993-94.

Additionally, Dr. Diaz indicated plaintiff required special accommodations to complete her job. Tr. 994. Specifically, he stated plaintiff required breaks every two hours so she can sit for fifteen minutes to elevate her feet above her heart. Id. Dr. Diaz also opined that plaintiff's concentration would be impaired such that she could not be expected to perform simple work tasks for 20% (i.e., eight hours) of a standard workweek. Tr. 995. Further, he opined plaintiff would miss sixteen hours per month because of her impairments, symptoms, or medications and their

side effects. Id. Dr. Diaz explained that the opined-to-limitations were attributable to plaintiff's "pain daily." Id.

The ALJ assigned "substantial to great weight" to Dr. Diaz's exertional and postural limitations, which he included in the RFC. Tr. 24. However, the ALJ assigned "none to little weight" to Dr. Diaz's "assessment that [plaintiff] would be off task or miss work." Id. The ALJ gave two reasons for rejecting these portions of Dr. Diaz's opinion: (1) they were inconsistent with plaintiff's 2017 work activity; and (2) "she has been able to function as a full-time mother of" her ten and fourteen-year-old children.

Regarding the ALJ's first reason, there is no contradiction between Dr. Diaz's assessment and plaintiff's work history. Plaintiff worked as a janitor at a women's shelter for no more than thirty hours per week between August and December 2017. Tr. 51, 1043. Prior to that she worked as a janitor for Courtesy Janitorial for fifteen hours per week. Tr. 323-25. This volume of work is not in-and-of itself inconsistent with Dr. Diaz's opinion. Moreover, plaintiff's supervisor at Courtesy Janitorial, Ronald Booker, testified that plaintiff was assigned fewer and/or easier duties, less hours, more breaks, and required more help than other employees. Tr. 324. Mr. Booker also indicated plaintiff's productivity was 60% or less than other employees. Tr. 325. Similarly, plaintiff's supervisor at the women's shelter, Marcela Cartagena, indicated plaintiff "struggles to accomplish this job." Tr. 326.[3] Accordingly, this rationale is not supported by substantial evidence.

As to the ALJ's second reason, there is a dearth of evidence in the record concerning the extent of plaintiff's childcare responsibilities or activities. The evidence that does exist indicates

---

[3] The ALJ accepted these two employer statements as evidence that plaintiff had "some difficulties with janitorial work"; however, he also concluded that the "evidence does not suggest she would have difficulties with lighter tasks." Tr. 23. Thus, the ALJ did not outright reject the third-party testimony. See id. (ALJ failing to assign any specific weight to Mr. Booker's statement but affording "some weight" to Ms. Cartagena's statement).

Page 5 – OPINION AND ORDER

that plaintiff's children were essentially self-sufficient and, in fact, provided some assistance to her. Specifically, plaintiff's children helped her get on and off the bus, carried bags when shopping, took care of the house, and helped her get out of bed in the morning. Tr. 44-46. In addition, plaintiff testified that her older child ensures that her younger child gets ready for school, such that she does not check on them before school in the morning. Id. Plaintiff testified that she cooks for her children twice per week, usually quick and easy meals, but does not complete any other household chores except folding laundry while sitting down. Id.; Tr. 267-74.

The record also reflects that plaintiff often struggled with her parenting responsibilities. See, e.g., Tr. 484, 598, 624. In fact, the only explicit reference in the record to plaintiff's ability to care for her children is an August 2017 progress note that simply lists "cares for 2 sons" as plaintiff's "occupational profile." Tr. 1044. As such, plaintiff's parenting responsibilities, at least as they are reflected in the record before the Court, do not constitute substantial evidence for rejecting Dr. Diaz's opinion, nor are they inconsistent therewith. See Treviso v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017) (absent specific details about claimant's childcare responsibilities, "those tasks cannot constitute 'substantial evidence' inconsistent with [a treating physician's] informed opinion").

In sum, although the ALJ provided specific and legitimate reasons to reject Dr. Diaz's limitations, those reasons are not supported by substantial evidence. The ALJ therefore committed harmful legal error as to the weight given to Dr. Diaz's opinion, such that remand is warranted. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record as a whole, leaves not the slightest uncertainty" concerning disability. Id. at 1100-01 (citations omitted); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As addressed herein, the ALJ committed harmful legal error by rejecting Dr. Diaz's opinion regarding plaintiff's time off-task and need to miss work. The record is nonetheless ambiguous regarding the extent of plaintiff's impairments. On the one hand, plaintiff suffers from significant osteoarthritis in both knees and venous insufficiency in both legs. She has been consistently seeking treatment and reporting pain associated with these impairments.

On the other hand, there is evidence that plaintiff's pain occurs largely after standing for long periods. Tr. 336-37. Plaintiff's daily activities are also fairly robust: she walks regularly (walking is her only means of transportation), is able to carry several large shopping bags, and provides childcare to her grandson (although the precise confines of that care are unclear, the record nonetheless reflects that he has slept over at plaintiff's home on at least one occasion). Tr. 337, 535, 613. Further, plaintiff consistently refuses to use compression stockings as prescribed by multiple care providers to treat her leg pain. See, e.g., Tr. 499, 929. There is evidence that plaintiff is capable of some work activity, even though that work is exertionally in excess of the ALJ's RFC. Tr. 323-26, 1008, 1076. Finally, the Court notes that plaintiff's teenage son submitted

Page 7 – OPINION AND ORDER

a witness statement that was not incorporated into the record or otherwise considered by the ALJ. Tr. 64; Pl.'s Opening Br. 8 n.6 (doc. 13).

In light of these ambiguities in the record, the Court declines to credit the medical opinion of Dr. Diaz as true and instead remands this case for further proceedings. See Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) ("[w]hen an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (citation and internal quotations omitted). Upon remand, the ALJ must reconsider the medical evidence and the extent of plaintiff's childcare activities, and reformulate plaintiff's RFC and obtain additional VE testimony, if necessary.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 20th day of April, 2020.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 8 – OPINION AND ORDER